MELINDA HAAG (CSBN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Acting Chief, Criminal Division

JEFFREY B. SCHENK (CSBN 234355)
Assistant United States Attorney

   150 South Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   Facsimile: (408) 535-5081
   jeffrey.b.schenk@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 10-00123-JW |
| )| |
| Plaintiff, ) | |
| ) | UNITED STATES' SENTENCING |
| v. ) | MEMORANDUM |
| ) | |
| NICOLE BERMUDEZ, ) | |
| ) | Date: December 6, 2010 |
| Defendant. ) | Time: 1:30 p.m. |
| ) | |

## I. INTRODUCTION AND FACTUAL BACKGROUND

The United States hereby submits its sentencing memorandum in the above-referenced case. In September 2010, a jury found the defendant guilty of one count of conspiracy to commit mail and wire fraud, five counts of wire fraud, six counts of engaging in monetary transactions in property derived from specified unlawful activity, and evidence sufficient to support two forfeiture counts. The defendant now appears before this Court for sentencing.

The evidence at trial and the jury's verdict support the government's contention that this defendant promoted a tax fraud scheme, known as the "Original Issue Discount" scheme. The defendant aimed to assist other individuals, including co-conspirator and convicted-felon Seth Sundberg (CR-09-00928-JF), to obtain illegal and undeserved tax refunds from the Internal

Revenue Service ("IRS").  In the case of Mr. Sundberg, the defendant assisted in the theft of a tax refund in the amount of $5,083,609.25.  The defendant assisted in Mr. Sundberg's theft by making fraudulent claims to the IRS.  Specifically, the defendant invented previously-withheld tax prepayments for Mr. Sundberg, filed this fraudulent information electronically with the IRS on behalf of Mr. Sundberg, and was paid over $800,000 by Mr. Sundberg for her efforts.

The evidence at trial also demonstrated that Mr. Sundberg was certainly not the only individual the defendant guided through this fraud scheme.  In fact, the defendant filed fraudulent information with the IRS, using her Filing Information Returns Electronically (FIRE) access code, on behalf of roughly 40 additional taxpayers.  The total amount of intended illegitimate tax refunds the defendant's false filings supported was over $20,000,000.  In other words, the defendant assisted her "clients" in claiming, and intended them to receive, tax refunds, in aggregate, valued over $20,000,000.

## II.  **PROCEDURAL HISTORY**

On March 2, 2010, the defendant was arrested in Georgia following a twelve-count indictment.  After appearing in Georgia and being represented by the Federal Public Defender, the defendant made her initial appearance in San Jose on April 1, 2010.  At that appearance, the defendant requested to represent herself.  After a *Faretta* hearing, Magistrate Judge Trumbull agreed and allowed the defendant to proceed *pro se*.

The defendant made her first appearance before this Court on April 5, 2010.  At this hearing, the Court inquired about the defendant's desire to represent herself.  The defendant, once again, reaffirmed her commitment to self-representation.  Also at this appearance, the Court denied the defendant's frivolous motions to dismiss the indictment.  At the close of this appearance, the Court inquired about the defendant's readiness for trial.  The defendant asked for additional time beyond the statutory 70 days.  The defendant selected August 31, 2010 as the first day of trial, and confirmed for the Court that she would be ready for trial that day.  No intervening court appearances were set.

As trial approached, the government filed several motions *in limine* and asked the Court to rule on the motions before the pretrial conference, scheduled for the first day of trial – August

31. The Court agreed and set a hearing for August 24.

On August 24, the defendant appeared telephonically for the pretrial conference. The Court ruled on several pretrial matters. Additionally, the government informed the Court that it would be seeking a superseding indictment the following day. The government told the Court and the defendant that the superseding indictment would contain no new charges, no new facts, and no new evidence. Rather, the superseding indictment would merely correct typographical errors, such as transposed numbers, in the original indictment. The Court asked the government if the defendant had been in possession of discovery containing the correct numbers. The government confirmed that she had. The defendant objected to a trial date only one week after a superseding indictment. The Court denied the defendant's objection, explaining to her that she had been in possession of discovery that substantiated the corrections. Also, at this hearing, the Court inquired whether the defendant still intended to represent herself. The defendant told the Court that she was considering hiring counsel. The Court instructed the defendant to make that decision as soon as possible, and in any case, to have counsel appear before the Court before the first day of trial and inform the government if/when counsel is retained. The defendant acknowledged her understanding.

On August 25, the government sought and received a superseding indictment. Once agin, the superseding indictment contained precisely the same twelve criminal counts and two forfeiture counts. The indictment corrected typographical errors present in the original indictment.

On August 31, the defendant appeared, still unrepresented, for the first day of trial. The Court arraigned the defendant on the superseding indictment. The defendant claimed she was not ready to proceed, on similar grounds as she previously raised, and requested a continuance of the trial. The Court denied the defendant's request and trial commenced.

At the conclusion of the trial, the defendant was found guilty on all twelve criminal counts and two forfeiture counts.

//

//

## III. SENTENCING GUIDELINES CALCULATION

### A.   Base Offense Level and Grouping Rules

The government agrees with the Probation Officer's calculation of the applicable United States Sentencing Guidelines ("U.S.S.G"). These Guidelines are advisory after the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005). The government also agrees with the Probation Office's conclusion that the twelve counts for which the defendant was convicted are a single group of closely related counts. [PSR ¶ 37.] Therefore, pursuant to U.S.S.G. § 3D1.3(b), "[w]hen the counts involve offenses of the same general type to which different guidelines apply, [the court should] apply the offense guideline that produces the highest offense level." Following that instruction, the offense guidelines for the counts that produce the highest offense level should be applied – counts seven through twelve (engaging in monetary transactions derived from specified unlawful activity). The defendant's base offense level for this count begins at 7. [U.S.S.G. §2B1.1 and PSR ¶ 38.] The base offense level is increased by twenty-two (22) levels, to 29, due to the amount of loss, over $20,000,000, involved in this particular offense.[1] [U.S.S.G. §§ 2B1.1(b)(1)(L) and PSR ¶ 38.]

Since the defendant was convicted under § 1957, the Base Offense Level is increased by one level to level 30. [U.S.S.G. § 2S1.1(b)(2)(A) and PSR ¶ 39.]

### B.   Sophisticated Means, Organizer Status, and Obstruction of Justice Enhancements

An additional increase of two levels is appropriate in this case due the sophisticated nature of the defendant's scheme. [U.S.S.G. § 2B1.1(b)(9)(C) and PSR ¶ 38.] The OID scheme was sophisticated enough to result in Mr. Sundberg receiving a $5,000,000 tax refund check. Moreover, this was a scheme, according to government witness Rajbir Singh Bal, that required an interested perpetrator to hire the defendant to arrange, accomplish, and manage it for him/her rather than carry it out alone.

---

[1]   Intended loss is an appropriate and legitimate method of calculating loss amount. See U.S.S.G. § 2B1.1 Application Note 3(A)(i) and (ii) and United States v. Santos, 527 F.3d 1003 (9th Cir. 2008).

UNITED STATES' SENTENCING MEMORANDUM
CR CASE # 10-00123-01-JW                          4

An additional increase of two levels is appropriate if the defendant was an organizer, leader, manager, or supervisor of the criminal activity. [U.S.S.G. § 3B1.1(c) and PSR ¶ 38.] Here, the jury heard two types of supporting evidence: First, the defendant provided a form of post-purchase "tech support," according to Rajbir Singh Bal. After the defendant assisted in the fraudulent filing, she also provided taxpayers with mailings and prepared answers to frivolous filing notices that she anticipated her clients would receive from the IRS. Second, the defendant was a registered user of the previously-discussed FIRE system. Registration in this electronic return filing system allowed the defendant to sell and promote her access, and to assist multiple taxpayers in their attempts to defraud the IRS. The defendant also hoped that her electronic filings into this system would subvert IRS efforts to discover and reconcile illegitimately-claimed tax refunds.

Finally, an additional increase of two points is appropriate in light of the defendant's attempts to obstruct justice. [U.S.S.G. § 3C1.1 and PSR ¶¶ 31-33.] Just as Mr. Sundberg had done (and received an accompanying two-level obstruction increase), this defendant defied a Judge's order, in this case, Magistrate Judge Trumbull, and defaced the original charging document. While this conduct appropriately forms the basis of a separate contempt charge, it also is appropriately dealt with, punished, and deterred by an obstruction of justice enhancement.

The defendant's resulting adjusted offense level is 36 [PSR ¶ 42.]

### C. Acceptance of Responsibility

Pursuant to U.S.S.G. § 3E1.1(a), Acceptance of Responsibility, since the defendant, even to this day, has failed to accept responsibility for her actions and failed to assist the government in recovering her portion, over $800,000, of Mr. Sundberg's fraudulent tax refund, she is ineligible for any acceptance adjustment. [PSR ¶ 44.] The government has expended significant resources identifying, levying, and otherwise seizing the fraudulent refund, all without any assistance from the defendant. Moreover, the defendant continues to minimize her role in the offense. *See* discussion *infra* Subsection V.

//

//

### D. Guidelines Range

The defendant's adjusted offense level is 36. [PSR ¶ 53.] The government and the Probation Officer calculate that the defendant has zero total criminal history points. Therefore, she falls into Criminal History Category I. [PSR ¶ 51.] An adjusted offense level of 36 when indexed with a Criminal History Category of I yields a U.S.S.G. range of 188 - 235 months imprisonment. Probation Officer Flores concluded that the significant nature, circumstances, and seriousness of this offense demand a sentence within the U.S.S.G. range. Therefore, Officer Flores recommended that this Court impose a 188-month custodial sentence. [PSR Sentencing Recommendation.]

### IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government agrees with Officer Flores' recommendation and urges the Court to impose a 188-month custodial sentence, 3 years of supervised release, a $1,200 special assessment, and restitution in the amount of $2,488,613.38.

### A. The Custodial Sentence

First, among the 18 U.S.C. § 3553(a) factors a sentencing court must consider are: <u>(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense</u>. 18 U.S.C. § 3553(a)(1) and (2)(A). *emphasis supplied*. Here, a low-end, but very significant, Guidelines sentence would punish the defendant justly and adequately for her significant criminal conduct and apparent lack of remorse for her actions. Moreover, since this defendant consistently questions the legitimacy and jurisdiction of this Court, a severe custodial sentence is necessary to impress upon this defendant, and similar defendants, respect for the law.

The defendant assisted in the theft of a substantial sum of money from the federal government. Immediately upon receiving these illegal funds, the defendant began transferring funds to various bank accounts. These actions demonstrate the significant planning involved not only in the defendant's scheme, but also her knowledge that the funds' origin must remain concealed. Apparently, the defendant is attempting to keep a significant portion of the funds

concealed until after she is released from custody. Such an attitude defies deterrence. As a result, the deterrent value of this defendant's sentence lies solely within the sphere of general deterrence. And, that fact, in turn, increases the need for the sentence imposed upon this defendant to reflect the seriousness of this offense. The recommended sentence will do just that.

The defendant assisted in securing, for Mr. Sundberg, the largest tax refund check issued by the IRS to an individual employing the Original Issue Discount fraud scheme. According to the IRS, for returns filed in 2008, Mr. Sundberg's single refund accounted for 7% of all of the refunds paid to taxpayers employing the OID scheme. Furthermore, Mr. Sundberg's outstanding refund, equal to roughly $2.5 million, accounts for nearly 13.5% of the outstanding refunds illegally obtained through the OID scheme.

Unfortunately, the OID scheme is a significant problem. Fraudulent taxpayers have attempted to receive over $24 trillion from the IRS through this scheme. A sentence within the Guidelines will send a significant deterrent message to future taxpayers contemplating tax fraud. Similarly, a significant custodial sentence for the defendant will also serve the important function of impressing upon other defendants the importance of making full restitution to the government following the commission of OID tax fraud.

### B.     Restitution

As discussed above, the defendant assisted and conspired with Mr. Sundberg who illegally obtained from the IRS a tax refund in the amount of $5,083,609.25. To date, the government has located and seized $2,594,995.87. This leaves $2,488,613.38 outstanding. [PSR ¶ 80.] Therefore, the appropriate restitution order in this case is in the amount of $2,488,613.38.

### V. DEFENDANT'S PSR OBJECTIONS

The defendant raised several objections to the PSR. The defendant's objections largely fall into two categories: (1) evidence of the defendant's continued failure to accept responsibility for her actions and (2) misplaced objections to the imposition of a custodial sentence. Falling under the first category, the defendant made several arguments, including denying the content of a particular e-mail she sent to Rajbir Singh Bal and claiming that her FIRE system filings were "replacement filings." After highlighting that the IRS is the victim in

this case, the defendant continued to argue that the U.S. Attorney's Office cannot legitimately represent the interests of the IRS in federal court. Rather than take responsibility for her actions, the defendant continues to deny her culpability and attempts to re-litigate the trial.

Simultaneously, the defendant made several misplaced objections to the PSR and the U.S.S.G. calculation. First, the defendant stated that the Supreme Court's recent decision in the *Skilling* case stands for the proposition that conspiracy charges require evidence of kickbacks. This is inaccurate. The Court in *Skilling* was addressing convictions under the honest services fraud statute. That is inapplicable here. Also, the defendant argued that if she received a Guidelines sentence, that would create a sentencing disparity between herself and the French criminal justice system. Again, this argument is misplaced. First, sentencing disparities are properly measured across a broad spectrums of cases. Paragraph 12 of the PSR cites similar intended loss cases from this judicial district in which defendants received sentences greater than the government's recommended sentence in this case. Lastly, the defendant cites no support for the proposition that district courts should be persuaded by international sentencing disparities.

## VI. CONCLUSION

For the reasons stated above, the government urges the Court to impose the sentence recommended by the Probation Office and the government: a 188-month custodial sentence, 3 years of supervised release, a $1,200 special assessment, and restitution in the amount of $2,488,613.38.

DATED: November 26, 2010          Respectfully submitted,

                                  MELINDA HAAG
                                  United States Attorney


                                  ___/s/_____
                                  JEFFREY B. SCHENK
                                  Assistant United States Attorney